## M'ALLISTER vs. REAB.

In an action of *assumpsit* for the recovery of the price of an article sold at a stipulated sum, a defendant may give evidence shewing the *true value* of the article sold in case of a *breach of warranty*, in reduction of the amount of the recovery claimed, as well in cases of a *sale with warranty* as in *cases of fraud*; such evidence being allowed to avoid circuity of action, and to prevent further litigation upon the same matter. And *it seems* that a

defendant would be allowed to give such evidence in a case of warranty, although the article sold was not returned to the vendor.

A merchant or manufacturer whose uniform custom it is to charge *interest* after ninety days upon articles sold or manufactured by him, is allowed to charge interest accordingly, to those who are in *the habit of dealing with him*, they being *presumed* to know such custom and to act in reference thereto.

Where a general objection is made to a decision of a court on the trial of a cause and on a review thereof it appears that the decision, if objectionable at all, is so only in part, the party is not allowed to avail himself of the objection, for the want of precision in stating it at the trial.

ERROR from the Washington common pleas. This was an action of assumpsit for goods sold and delivered. On the trial, the plaintiff, a stove dealer, produced an account of sundry items alleged to have been sold to the defendant, and which was proved by his clerk to be a true extract from his books of account. On the extract was a charge for a patent cooking stove, the delivery of which was proved by the clerk, and that the defendant was told that the price was $40 cash, or $45 if sold on a credit of six months. Besides the delivery of the patent cooking stove, he proved the delivery of stove pipe, a dumb stove, wire &c. appendages to the stove, and of sundry other articles charged in the books and that the defendant was in the habit of dealing at plaintiff's shop on a credit, and had work done there occasionally that a part of the entries were made by the plaintiff and a part by the witness ; that the plaintiff always charged interest on his accounts after ninety days, which custom he believed was generally known ;. and that he had been present at settlements by the plaintiff with different individuals and never heard any complaint as to the correctness of plaintiff's books. The books of account were then received in evidence although their admission was objected to by the defendant ; from the books it appeared, that the plaintiff's account amounted to $74,26, and it was proved that the interest on the same amounted to $11,80. Besides the above, two witnesses testified that the defendant had admitted the correctness of all the items charged in the plaintiff's account, except the stove pipe, dumb stove, and wire appendages to the stove. The defendant objected to the *plaintiff's right to re-*

*cover interest,* which objection was overruled. The plaintiff rested.

The defendant then, in pursuance of a notice attached to his plea, offered to prove that the plaintiff *warranted* the stove to draw and carry smoke well and to cook well, and that the stove did not draw and carry smoke well; that after every possible experiment made, it was found it would not draw; that the bottom plate was warped, and that the plates did not fit together; that the defendant took the stove to the plaintiff and offered to return it, but that the plaintiff refused to receive it back. It was not pretended that there was any fraud in the sale, but the defendant insisted that he was entitled to give this evidence as a set off of damages for the breach of the plaintiff's contract of warranty, and to reduce the amount of the plaintiff's recovery. The evidence was objected to by the plaintiff, and rejected by the court on the ground that unliquidated damages for a breach of a warranty cannot be set off in an action of assumpsit; and that where there has been an absolute, unconditional sale of an article for a stipulated price, and no fraud shewn, although there be a warranty, a breach of such warranty cannot be given in evidence to reduce the stipulated price of the article; that had fraud existed, the defendant would have had a right to have shewn it, either wholly to defeat the plaintiff's right to recover for the article sold, or to reduce the amount of his recovery to the value of the article sold; but as no fraud was shewn, the contract of sale stood unimpeached, and there was a sufficient consideration to support it. To this decision the defendant excepted. Sundry items of set off were proved on the part of the defendant, and the court charged the jury, that the plaintiff was entitled to recover the amount of his account, including the stove at $45 and the interest to be computed from the expiration of the credit, after deducting the amount of the defendant's account proved. The jury found for the plaintiff, with $65,61 damages, on which verdict a judgment was entered.

*C. L. Allen,* for plaintiff in error. The account books of the plaintiff were improperly received in evidence. Within

the decision of *Vosburgh* v. *Thayer*, (12 Johns. R. 461,) the plaintiff ought to have proved by a customer that he kept correct and honest books. The books shewed the price of the several articles, and therefore were important testimony and not rendered immaterial by the other evidence in the case.

Interest ought not to have been allowed except on the article of the stove sold : the custom of the plaintiff to charge interest was not brought home to the defendant, and there was no agreement, either express or implied, to pay interest for any other article. (2 Wendell, 501. 3 Cowen, 425.)

The evidence offered by the defendant below to reduce the amount of the plaintiff's recovery ought to have been received. (2 Wendell, 431. 8 Cowen, 31. 10 Johns. R. 250. 11 id. 548. 13 id. 302. 18 id. 141. 7 East, 480. and n. 2 Taunton, 2, 1 Campb. N. P. 190.) The principle to be extracted from all these cases is, that a defence of the nature set up in this case is permitted as best calculated to do final and complete justice between the parties, most expeditiously and least expensively, and to avoid circuity of action. The contract was rescinded by an offer to return the stove, although there being a warranty, an offer to return was not necessary. (2 Starkie's Ev. 640, 644, 645. 1 Mason's R. 437. 3 Esp. Ca. 83.) The evidence was not only admissible, but if the defendant below had neglected to avail himself of the defence, he would not have been allowed subsequently to maintain an action for a breach of the warranty. (1 Campb. N. P. 190. 8 Johns. R. 453. 9 id. 232. 14 id. 377.) The counsel also referred to the case of *Reynolds* v. *Colton and others*, decided in this court previous to 1824, not reported, which was an action for a breach of warranty in respect of the quality of paper manufactured by the defendants for the plaintiff. Reynolds was sued for the price of the paper, but did not apprise his counsel of the breach of the warranty, wherefore no defence on that ground was interposed, and the plaintiffs recovered. Afterwards Reynolds prosecuted for the recovery of damages for the breach of the warranty, and the court refused to sustain the action, holding that the claim ought to have been set off in the former

action, and that such action was a bar to the recovery in the second suit.*

NEW-YORK,
May, 1830.

M'Allister
v.
Reab.

*S. Stevens,* for defendant in error. The books of account were properly received in evidence, but if not, the other proof in the cause was amply sufficient to support the plaintiff's demand. (8 Johns. R. 211.)

As to the allowance of interest. The whole sum allowed was only $11,80, the principal part of which arose on the item for the stove, which indisputably drew interest after the time stipulated for payment; as to the residue, the jury had a right to presume a knowledge by the defendant of the plaintiff's custom, and if not, the court will not for this cause reverse the judgment, but order it to be deducted from the judgment. A *venire de novo* will not be awarded for the mere purpose of having the interest deducted on a second trial.

The evidence offered was inadmissible as the foundation of a set off. A demand growing out of a special agreement necessary to be set forth particularly in a declaration, cannot be set off; to authorise a cross demand to be set off in a court of law, it must be liquidated, certain and determinate. (Cowper, 56. 6 T. R. 488. 2 Johns. R. 155. 6 Cowen, 613. 8 id. 310. 3 Johns. C. R. 357, 359. 4 id. 292, 3.)

The evidence was inadmissible also in reduction of the price of the article sold. The offer of the defendant to return the stove cannot influence the decision of the question. The sale being absolute and unconditional, the defendant had no right to return it without the consent of the plaintiff; it is not in the power of one of the parties to a contract to rescind it; (Doug. 23, 4; Cowper, 818;) the remedy of the party was upon the warranty. (1 T. R. 133. 7 East, 274. 12 Wheaton, 183.) If the damages cannot be set off *directly*, they cannot *indirectly*, by allowing evidence in reduction of the stipulated price. Were the action upon a *quantum*

---

* The reporter is informed that the present chief justice was counsel for one of the parties in the case cited by the counsel, and that the report of the case is substantially correct,

NEW-YORK,
May, 1830.

M'Allister
v.
Reab.

*valebat* instead of a special contract at a stipulated price, it might be different, for then the vendor would be entitled to recover only the value of the article sold. Where there is fraud on the part of the vendor, it is at the option of the vendee either to rescind the contract and bring an action of assumpsit for the purchase money or case for the deceit; or where the purchase money has not been paid, he may rescind the contract and defeat the recovery altogether; or if he keeps the article sold, he may reduce the recovery to its fair value, the plaintiff's fraud appearing, being driven to his *quantum valebat*; but where there is no fraud, and the party has taken a warranty, he cannot rescind the contract, nor can he recover back the purchase money, but is driven to his action on the warranty. If a pary cannot recover back the purchase money, he surely cannot defeat an action for the recovery thereof. The doctrine contended for by the plaintiff below, is fully supported by the supreme court of the United States in *Thornton* v. *Wynne*, (12 Wheaton, 183,) in which case all the English decisions upon this subject are reviewed, and there is no case to be found decided in bank impugning the decision in *Thornton* v. *Wynne*. In all the cases seeming to support a contrary doctrine, the action was either upon the *quantum meruit*, or *quantum valebat*, or *fraud* was shewn in the vendor; thus, in 7 East, 479, the action was upon a *quantum meruit*; 13 Johns. R. 302, 15 id. 230, and 2 Wendell, 431, were cases of fraud. 18 Johns. R. 141, is not analogous; there the defendant was permitted to shew that the whole of the articles sold had not been delivered, in consequence of which the value of the part delivered was lessened. In 8 Cowen, 31, the question now under consideration was agitated but not decided; what was said by Mr. Justice Woodworth, favoring the views of the defendant below, is the *dictum* of the judge and not the adjudication of the court.

Where fraud is shewn the contract is destroyed, and the plaintiff is driven to his *quantum meruit* or *quantum valebat*; and then the sole question is, what is he entitled to recover; not so where there is a warranty and no fraud shewn; a failure of the warranty does not destroy the contract; it is available to each party, and each may maintain his action,

the one for the price of the article and the other to recover damages for the breach of the warranty. It is upon this principle that a partial failure of consideration, unless occasioned by the fraud of the plaintiff, cannot be given in evidence in reduction of the damages. (2 Campb. N. P. 40. 2 id. 346. 12 Wheaton, 183, 1 Starkie's R. 42.)

<span style="margin">NEW-YORK, May, 1830.<br>M'Allister<br>v.<br>Reab.</span>

*By the Court*, MARCY, J. I am inclined to think that the objection to the books of account as evidence was not well taken; but it is not necessary to settle that question, because there was abundant proof without the books to establish all the items of the account. Two witnesses testified to the acknowledgement of the defendant as to the correctness of all the items, except those which related to the cooking stove and its appendages; and as to the sale of those, there was no question made at the trial.

The instruction of the court to the jury to allow interest appears to me to have been correct. The objection to the allowance of any interest whatever was overruled by the court and the decision excepted to. There was an express agreement for interest as to the cooking stove. The objection so far as it related to this item of the account was clearly unfounded. But it is contended that the court erred if there was any item on which interest could not be legally charged. I doubt this proposition. If counsel will not discriminate in their objections so as to draw the attention of the court to what is conceived to be objectionable in the decision made, they are precluded from urging it as a cause for reversing the judgment. On a part of the account interest was allowable, on another part the defendant contended it was not; he made a general objection to the charge for interest. If the court had allowed the objection, they would have erred, because on one part of the account interest was chargeable: and it is contended they erred in disallowing the objection, because on another part it was not a legal charge. The objection was not sufficiently discriminating; it should have been only to an allowance of interest on that portion of the account which the defendant conceived

did not draw interest. I do not think the charge of interest on any part of the account objectionable. The plaintiff proved that the defendant was one of his customers, and that he always charged interest on his accounts after ninety days. The uniform custom of a merchant or manufacturer is presumed to be known to those who are in the habit of dealing with him, and in their dealings are supposed to act with reference to that custom.

The main question in this case is, that which arises on the decision of the court excluding the evidence of the breach of the warranty on the sale of the cooking stove. This evidence was offered for two objects; first by way of setting off the damages for the breach of the warranty; and secondly to shew that the stove was of less value than the price agreed to be given for it. In relation to the first, the court below lay down the general proposition that damages arising from a breach of warranty in such a case as this cannot be set off in an action brought for the price agreed to be given; and as to the second, they say that where there is an absolute unconditional sale with warranty for a stipulated price without fraud, a breach of the warranty cannot be given in evidence to reduce the price below the sum agreed to be paid. It was admitted that if there had been fraud imputable to the defendant, the plaintiff would not be, as without fraud it was contended he was, obliged to resort to his cross action, but might reduce the claim below the stipulated price, by showing the stove not to be such as it was warranted to be.

Upon what principle are the damages for the breach of the warranty allowed in a case where there is fraud to be given in evidence to reduce the recovery below the stipulated price? Not on the ground of set off, because these damages are unliquidated. Is it upon the ground that the contract is destroyed by the fraud? If it is rendered void, upon what principle can the vendor recover at all? I know it has been said he recovers upon a *quantum meruit* or *quantum valebat;* but if there was no contract by reason of his fraud, there was no sale; no passing of title. Can an implied sale be set up in lieu of the express one? This I think may well be doubted, although the express contract may be void.

The case of *Beecker* v. *Vrooman* (13 Johns. R. 302,) seems to have been put upon the ground that the sale was valid. The language of the court does not countenance the idea that the question in that case was the mere value of the horse. It is there intimated that a different rule now pre-vails from what formerly governed, which commends itself to the court, because it is calculated to do *final* and com-plete justice between the parties most expeditiously and least expensively; but if the parties were proceeding without re-gard to the express contract upon an implied one, and were only establishing the true value of the horse, there was no new rule, and the language of the court was not very appro-priate to the question before them. In the case of *Leggett* v. *Cooper* (2 Starkie's N. P. 93,) where the counsel for the defendant resisted the recovery on a contract for the sale of hops on account of fraud, Lord Ellenborough said, " if there is no contract for the sale of the goods at the stipulated price, there is no contract upon the *quantum meruit* for goods sold and delivered." The action in the case of *Frisbee* v. *Hoff-nagle*, (11 Johns. R. 50,) was on a note given for the consid-eration of a deed with warranty for land. The defence was, that the vendor had not title, and it was allowed to prevail, not upon the ground that the contract for the sale was inva-lid by reason of fraud, but for the purpose of avoiding circui-ty of action.

The decision in the case of *Spalding* v. *Vandercook* (2 Wendell, 431,) does not I apprehend proceed on the ground of fraud alone. The consideration of the note was the ful-filment of the contract to deliver barrels. If the whole con-tract was cut up by the fraudulent conduct of the plaintiff, the note was entirely without consideration; but it was not so considered. So, in the case of *Burton* v. *Stewart* (3 Wendell, 236,) there was fraud in the sale of the horse, yet the note given on the sale was not adjudged to be without consideration. The contract was broken, but it had a valid existence; and the court entertained no doubt in that case that if there had been a proper notice, the amount of the re-covery would have been greatly abated by the proof of what

NEW-YORK.
May 1830.

M'Allister
v.
Reab.

was offered ; it was, however, rejected for the want of such notice.

From an examination of the cases, I am satisfied that in those where the damages arising from a breach of a warranty in the sale of chattels have been allowed to be given in evidence by the defendant to reduce the amount of recovery below the stipulated price, the decisions of the court have not proceeded on the ground that the express contracts were *void* by reason of fraud, and that the recovery was had upon a *quantum meruit*, or *quantum valebat* upon implied contracts, but upon a principle somewhat different from either of those adverted to in this case by the court below ; upon a principle which has of late years been gaining favor with courts, and extending the range of its operations. Such defence is admitted to avoid *circuity of action*. A second litigation on the same matter should not be tolerated where a fair opportunity can be afforded by the first to do final and complete justice to the parties. If a defence resting on such a principle is allowed, as I think it is, in a case of a warranty *mala fide*, I see no good reason for not allowing it in a case of a warranty *bona fide*. The effect would be as salutary, and the inconveniences arising therefrom would be as few in the one case as the other. The distinction contended for on the part of the defendant here is recognized, I admit, in many cases, and some of them of high authority ; but in others, and those mostly of a more recent date, it seems to me to have been disregarded.

Where a seedsman sold seed and warranted it of a particular sort and quality, it is said Lord Kenyon thought the damages for a breach of the warranty might have been given in evidence in the action for the stipulated price in reduction of it, although on the trial of the action for the price agreed to be given, *Buller J.* had decided otherwise. (*Cormack* v. *Gillis*, referred to in *Basten* v. *Buller*, 7 East, 480.) In the case of *Fisher* v. *Samuda*, (1 Campb. R. 190,) Lord Ellenborough suggested that the quality of the beer (which was inferior to that contracted for) should have been given in evidence in the suit by the vendor for the price, instead of bringing a cross action on the warranty. The reason he as-

signed for this opinion was not that the contract was void for fraud, but that the first suit afforded an opportunity to do final justice between the parties.

In an action for the price of a horse sold for 12 guineas and warranted sound, the defendant was allowed to reduce the plaintiff's damages to a very small sum by proving that the horse was not according to the warranty. (*King* v. *Boston*, 7 East, 481, *n.*)

It was said by *Woodworth*, J. in the case of *Hills* v. *Banister*, (8 Cowen, 31,) "If the plaintiff had refused to recast the bell, I incline to think a partial failure of consideration might be a defence in mitigation, *although there be no fraud.*"

The idea that fraud must be shewn to enable the defendant to set up such a defence as that offered in this case, does not appear to have occured to Mr. Starkie when considering this subject. According to his views, " where the article of sale is warranted, it seems that the vendee is entitled to prove the inferiority and the breach of the warranty in diminution of the damages, although a specific price has been agreed for, and although he has not rescinded the contract *in toto,* as he might have done by returning the article. This is not open to the objection that the defendant ought to have rescinded the contract *in toto,* for from the very nature of a contract of warranty he has a right to keep the goods and recover damages for the breach of warranty." (2 Vol. of Starkie, 645.) It would be a mistake to infer from the language above quoted, that the rule he lays down applies to conditional sales only. What is said in relation to rescinding the contract is designed to meet and answer the objection which has sometimes been made, that although the sale is absolute, yet if the purchaser finds the article not according to the warranty, he ought not to sustain an action thereon till he has returned or offered to return the property purchased.

I am persuaded that if we should circumscribe the operation of the rule in the manner contended for by the defendant in error here, we should limit its usefulness; but by extending it to cases of sale on warranty without fraud, we shall

thereby curtail litigation without creating confusion by en-
croachments upon established principles of law. I am there-
fore of opinion that the court below erred in refusing the
evidence offered by the defendant, and that the judgment ought
to be reversed.

Judgment reversed and *venire de novo.*