## Jones and Buck *vs.* T. Swan and C. Swan.

A., in New-York, having two *bills of exchange* drawn on B. & C., a mercantile firm in Liverpool, for £500 sterling each, endorsed by B. a member of that firm, for the accommodation of A., sold the bills to D. & E., and took their notes. The bills were not accepted or paid ; the funds of A. in the hands of the drawees being less than £150. After notice of the non-acceptance of the bills, it was agreed between A. and D., that D. & E. should return the bills to A. and pay him $1000, reserving to A. the right to pursue his remedies on the bills against B. & C., and A. agreeing to deliver up to D. & E. their notes. Subsequent to which agreement, E., the other member of the firm of D.'& E. entered into an arrangement with C. in Liverpool, in consideration of receiving payment of two other bills which his firm held against B. & C., not to claim payment of the bills purchased of A., either from the endorser or the drawees. Under this state of facts, the bills, after being returned to New-York, were tendered, together with the $1000, to A. And *it was held*, in an action on the notes against D. & E., that such tender discharged them from their liability ; that a delay of 3 months and 18 days in procuring a return of the bills was not unreasonable ; and that the notes having come into the hands of certain *creditors* of A., as security for previous advances made by them, and the action being brought in their names, *it was further held*, that the arrangement between A. & D. having been made with the knowledge and assent of such creditors, the defence set up was available against them, as if the suit had been in the name of A.

This was an action of *assumpsit* tried at the New-York circuit in October, 1828, before the Hon. Ogden Edwards, one of the circuit judges, and a verdict entered for the plaintiffs for $5,709,58, subject to the opinion of the court on a case made, with an agreement annexed, that a nonsuit should be entered, if the court should be of opinion that the plaintiffs were not entitled to recover.

The action was brought on two promissory notes, amounting together to $4,716,44, dated 20th of July, 1825, payable 90 days after date, to William Chapman, made by the defendants, and endorsed by him. The suit was in the names of the plaintiffs as *endorsees* of Chapman ; the plea was the general issue. The consideration of the notes was the pur-

NEW-YORK,
May, 1831.

Jones
v.
Swan.

chase by the defendants of the plaintiffs, as the *brokers* of Chapman, of two *bills of exchange* of £500 sterling each, dated 18th July, 1825, payable in London, 60 days after sight, drawn on Messrs. Wainright and Shiels, of Liverpool, by one William H. Stansbury, in whose name Chapman carried on certain mercantile operations, payable to E. Wainright, one of the firm of Wainright and Shiels, and endorsed by him. The bills were protested for *non-acceptance* and *non-payment*, in consequence of the drawees having stopped payment about the middle of August. At the time of their failure, the whole amount of funds in their hands, applicable to the bills drawn by Stansburry, was only £149 10s. 11d. This firm made an assignment of their property for the benefit of their creditors, and their estate yielded 16s. 3d. in the pound. Previous to the drawing of the bills, Chapman had made various shipments of cotton from New-York to Liverpool, consigned to the firm of Wainright and Shiels, and representing to Wainright, one of the firm, who was in New-York, that he had funds sufficient in the hands of his firm at Liverpool, to meet the two bills of exchange drawn by Stansbury, induced Wainright to endorse the bills, who endorsed them for the accommodation of Chapman, to enable him to raise funds in New-York. Accounts of the failure of Wainright and Shiels were received in New-York about the 27th of *September*, which caused an immediate stoppage of E. Wainright in New-York. On the 6th *October*, an arrangement was entered into between Chapman and C. Swan, in behalf of himself and his partner, T. Swan, whereby it was agreed on the part of T. & C. Swan, that they would return to Chapman the two bills of exchange purchased by them, and pay him in 60 days from the return of the bills, the sum of $1000 ; and that Chapman should have the right to enforce the bills against Wainright and Shiels for his own benefit, without recourse, however, to T. & C. Swan ; and on the part of Chapman, it was agreed to return to T. & C. Swan the notes made by them on the purchase of the bills. On the 5th *December*, T. Swan, who was in Liverpool, made an arrangement with Shiels, one of the firm of Wainright and Shiels, in considera-

tion of receiving from him payment of two bills held by him and his partner, drawn by E. Wainright, on the firm of Wainright and 'Shiels, one for £1500, bearing date, New-York, June 22, 1825, and the other for £1000, bearing date New-York, July 5, 1825, that he would not claim payment *from them* or *from E. Wainright,* of the two bills drawn by Stansbury, reserving only the right to claim payment from Stansbury. The bills drawn by Stansbury were protested for *non-payment* in London, on the 24th October, 1825, and were not received by C. Swan in New-York, until about 11th February, 1826, the ship Pacific, in which they were returned from Liverpool, having had a long passage of sixty days. On the last mentioned day, C. Swan tendered the bills of exchange and $1000 in cash to Chapman, and demanded the notes of himself and partner, in pursuance of the arrangement of 6th October, 1825. Chapman said he had not the notes in his possession, and refused to give any information respecting them. The notes were found in the posseision of the *plaintiffs* in this cause, to whom the same tender of the bills of exchange and $1000 was made, which they refused to accept, and also declined to give up the notes, claiming to hold them on account of unsettled demands they had against Chapman. The evidence in relation to the claim of the plaintiffs to the notes is as follows: The plaintiffs were the brokers of Chapman, sold the bills, and received the notes of the defendants, which they negotiated, and credited the proceeds to the account of Chapman, he being at that time indebted to them in that amount. Shortly before the maturity of the notes, they, at the request of Chapman redeemed the notes with other notes of Chapman, with a new endorser, at an extended credit, by paying the interest. The plaintiffs allege, in an *answer* to a bill in chancery filed by the defendants, and which was produced by them as evidence on the trial of this cause, that they hold the notes by the consent of Chapman, given *before* his failure, (which took place in *January,* 1826,) and *before* any offer to return the bills by the defendants, as a security in part for a large sum of money due to them from Chapman, and for which they hold no other security. In a supplemental answer also produced in evidence, they say

that at the time the notes of the defendants came into their hands a second time, Chapman was largely indebted to them for monies previously advanced by them to him, and authorized them to hold the notes in part satisfaction or security for such indebtedness, whereby they acquired a beneficial interest in the notes prior to their coming to maturity. The period of their acquiring an interest in the notes by the consent of Chapman, according to the testimony of Chapman, he being produced as a witness by the plaintiffs, was *after a sufficient time had elapsed for the return of the bills from England.* Chapman further testified, that after waiting what he thought a reasonable time for the return of the bills from England, he frequently called at the counting house of the defendants, and offered to carry into effect the *agreement* of October, 1825, and continued such offers, and was *at all times ready* to carry into effect such agreement, until about the 20th January, 1826, when, having become embarrassed, he was compelled to stop payment. He however testified, that on the day the notes fell due, he left them in the hands of the plaintiffs, as collateral security for a debt he owed them, but admitted that subsequent to that time he went with the notes, which he borrowed from the plaintiffs, to the defendant C. Swan, and offered them to him in exchange for the bills and the $1000; and he further testified that the agreement of the 6th October was made with the knowledge and assent of the plaintiffs, or of one of them, they having had knowledge of the same, either on the day that the agreement was made, or a few days thereafter. It was also proved, by another witness, that in the months of *November* and *December*, 1825, Chapman several times called at the store of the defendants, stating that he had come to deliver up the notes, and receive the bills of exchange.

The case was argued by

*W. Slosson & D. B. Ogden,* for the plaintiffs.

*J. Duer & G. Griffin,* for the defendants.

BY THE·COURT.* The·verdict in this case was taken subject to the opinion of this court upon the facts. There is no room to question that Stansbury's name was used by Chapman as a mere matter of convenience, and the plaintiffs were apprised of it. That the plaintiffs were *bona fide* holders of the promissory notes was urged on the argument, but the facts of the case do not warrant the position. They knew of, and assented to the agreement of the 6th of October; they must have been aware of Chapman's object in employing them to procure for him the notes; and though on the day they came to maturity, he pledged them as a security for an antecedent debt due to the plaintiffs, yet he had possession of them long after that time, and tendered them to the defendants in fulfilment of the contract of the 6th of October. The plaintiffs stand in no more favorable situation, as respects this suit, than Chapman himself would occupy as plaintiff.

Viewing the situation of the plaintiffs in this light, only two questions are presented for determination : 1. Was there a failure of the consideration for the notes? and 2. Had Chapman a right to rescind the contract by reason of the agreement of the 5th of December, between the defendants and the house of Wainwright and Shiels; or by reason of the delay of the defendants to execute the contract of the 6th October within a reasonable time? If there be a total failure of consideration for a note, that fact may be given in evidence under the *general issue*, when the suit is by the payee, or any other person not having the rights of a *bona fide* holder against the maker; but where the failure of consideration is only·partial, the defendant cannot set it up, unless he has given notice thereof. *Spalding* v. *Vander Cook*, 2 *Wendell*, 431. *Burton* v. *Stewart*, 3 *id.* 236. 4 *Wendell*, 483. What was the consideration for the notes on which this ac-

* This case was argued in May term, 1830. Mr. Justice MARCY was present, and heard the argument. Having written an opinion in the case, it was adopted by his associates, and is published as the opinion of the court, although previous to the May term he had *resigned* his seat on the bench. The same remark applies to other opinions published as of this term, designated as *per curiam* opinions.

NEW-YORK, tion is brought? The two bills of exchange. Were they of
May, 1831. any value, at the time they were given as the consideration

Jones for the notes? That they were of no value, will hardly be
v. affirmed. Without deciding the question whether the de-
Swan. fendants could have resorted to Chapman, when Wainwright
and Shiels refused to accept the bills, they had a perfect
right to enforce the payment of them against the endorser,
Eli Wainwright. His failure does not establish the fact that
bills against him for £1000 were, subsequent to that event,
valueless. But if it should be considered that the drawer
and endorser were not only bankrupt, but wholly unable to
make any dividend among his creditors, and the persons on
whom the bills were drawn should have refused to accept,
it is doubted whether the purchaser of the bills in market,
who has given his note therefor, can resist a recovery on
such note by the payee, or a *bona fide* holder, on the ground
that the bills were no consideration for the note. Where a
member of a firm had drawn bills, endorsed them in his own
name, and raised money on them, which was paid into the
firm, it has been decided that the firm cannot be made lia-
ble, either on the bills, although it was alleged that they were
drawn on its account for its use, and by the authority of the
other partners, or for the money received on the discount, and
paid to the firm. In *Emly* v. *Lye*, 15 *East*, 7, Lord Ellenbo-
rough said : " If the bills had been void, as if, for instance, they
had been forgeries, that might have been a different case ;"
that is, the firm might have been liable for the money raised on
the void bills, "because," as he observes, " then no considera-
tion would have passed to the person discounting ; but here a
good consideration was given for the discount, namely, the re-
sponsibility of the drawer of the bills." In the case under con-
sideration the bills were not void ; the responsibility of the en-
dorser, if there was none in the drawer, constituted a good con-
sideration. There is no pretence for the defendants to say that
the notes are without any consideration. It is unnecessary
to determine the effect of a partial failure of consideration ;
for, if there was a partial failure, the state of the pleadings
would not allow the defendants to avail themselves of that
fact ; no notice of such defence having been given.

NEW-YORK,
May, 1831.
Jones
v.
Swan.

The next enquiry is, whether the contract of the 6th October, 1825, was rescinded. If Chapman had the right to rescind, he must be considered as having done so. If the defendants had done any act in relation to the bills that put it out of their power to fulfil the contract, Chapman had a right to treat it as abandoned by them. If the agreement of the 5th of December, rendered the bills in the hands of Chapman of less value to him than they would have had without that agreement, then he had a right to say the defendants had violated their contract with him, and put it out of their power to execute it according to its spirit, and the intent of the parties. Assuming that the contract between T. Swan and the house of Wainwright and Shiels was valid, and operated to discharge E. Wainwright from all responsibility as endorser of the bills, would the bills have been of less value to Chapman, in consequence of that contract? The whole effect to be attributed to this contract, is the discharge of E. W. as endorser. Would this circumstance have impaired the value of the bills in any respect in the hands of Chapman? If it would; if the bills would not have been of the same value to him after this agreement as before, then he had a right to say these defendants have disenabled themselves from fulfiling their engagement, and he might consider himself released from performing on his part. In only two respects can Chapman complain of the effect of the agreement of the 5th of December. It affected, he may allege, his claim upon E. W. as endorser of the bills, and his claims on the house of Wainwright and Shiels. To ascertain whether it did the former, it will be necessary to consider the circumstances under which E. Wainwright's endorsement was made. Chapman, as we have seen, it is to be regarded as the drawer of the bills. E. W. endorsed them under an expectation, founded, as we may well suppose, on Chapman's representation, that there were or would be funds in the hands of the drawees to pay them. If they were mistaken in this expectation, however it may have arisen, and there were no funds, E. Wainwright is to be regarded in no other light than as an accommodation endorser, and as such he could never have been responsible to Chapman. But

suppose there were funds, how stands the case then? The case of *Emly* v. *Lye*, shews that E. Wainright can never be considered as identical with the firm of Wainwright and Shiels; and if not, he is then nothing more than an accommodation endorser. But if the firm was to be considered as bound by the endorsement, the case would not be altered. The company refuse to accept the bills; they cannot, therefore, hold Chapman's funds for the purpose of paying them; and he has a right to those funds which is not in any manner impaired by discharging the firm from their liability as endorsers. I am unable to discover in what respect the bills would not have been of the same value and legal effect to Chapman, as holder, after as before the contract made by the defendants with Wainwright and Shiels. The facts do not warrant the position of the counsel for the plaintiffs, that the bills were an appropriation of the funds in the possession of Wainwright and Shiels. There is no designation of a particular fund in the bills; and without such designation or reference to some fund, a bill is not a draft on it, so as to create an equitable lien or, operate as a transfer, 1 *Paige's Ch. R.* 579; but if such was adjudged to be the case, it would not support the inference that Chapman's rights to that fund had been impaired by the agreement, by which E. W. was discharged from the responsibility of his endorsement; the firm is not affected by that agreement. Was there an unreasonable delay on the part of the defendants, in complying with the contract of the 6th October, 1825? It must have been known to the parties at the time they made it that the bills were in Europe, and there was no great delay in procuring a return of them. They were received at New York in January, or early in February, and shortly after tendered to Chapman, in fulfilment of the contract, and he had no sufficient excuse for refusing to receive them. The view taken of this case supersedes the necessity of examining the question raised on the argument, as to the validity of the contract of the 5th December, it being assumed in this opinion that it operated to release E. W. from his responsibility as endorser of the bills.

                                    Nonsuit ordered.