## JOSEPH B. STEVENS & *al. vs.* THEODORE B. McINTIRE.

Between the original parties to a note, the consideration is open to inquiry.

Where the consideration of a note was the assignment of one half of the interest in a bond for the conveyance of land, and it was agreed between the parties, that the assignee should pay, by his note to the assignors, the same amount they had given therefor; and where through the misrepresentations of the assignors the note was taken for four times the sum by them paid for the same; *it was held*, in an action on the note between the original parties, that the assignors should recover the amount by them paid, and no more.

ASSUMPSIT on a note of hand, given by the defendant to the plaintiffs, dated *March* 18, 1833, for $500, in 90 days and interest. The execution of the note was admitted, but the right of the plaintiffs to recover was resisted, on the ground of fraud and misrepresentation on their part. The defendant introduced evidence tending to prove, that on the 10*th* day of *March*, 1833, one *Hatch*, being the owner of a bond from *Reed & Porter*, conditioned to convey to him a township of land, sold and assigned one half thereof to the plaintiffs for the sum of $500. The defendant also introduced evidence tending to prove, that the plaintiffs agreed to

Stevens & al. *v.* McIntire.

convey to the defendant one half of their purchase at the same rate they had given to *Hatch.* They in fact took notes of the defendant for one thousand dollars, representing to him that they had given *Hatch* two thousand dollars. The note in suit is one of those notes. The defendant, for the purpose of showing false and fraudulent representations to him, offered one *Baldwin* as a witness, to prove false statements made to *Baldwin* by the plaintiffs in relation to the same bond. This testimony was objected to by the counsel for the defendant, but was admitted by *Emery J.,* who presided at the trial. There was evidence in the case, that the defendant said, that he had bought the bond on speculation, and that he did not know how much the plaintiffs gave for the bond. It also appeared in evidence, that after his purchase of the plaintiffs, the defendant and the others interested in the bond employed one *Valentine* to go to *Reed & Porter,* and obtain a new bond from them, and that he paid a portion of the expense; that a new bond was obtained running to *Valentine* and by him immediately indorsed to the plaintiffs and defendant and the others interested in the bond, and that the defendant assented thereto. It was proved, that the last bond was sold to one *Dibble,* and notes and $500 in money taken of him. Those notes, when this action was tried, were in suit in the name of the plaintiffs. There was no evidence, that the defendant had ever offered to reconvey to the plaintiffs his rights derived from the purchase of the bond, or his interest in what was received from *Dibble.* It did not appear, that the defendant did any act confirming the contract, or interfering with the property after he had obtained full knowledge of the misrepresentations of the plaintiffs.

The counsel for the defendant contended, that the note was not recoverable on account of the fraud and misrepresentation practised upon him by the plaintiffs; and the plaintiffs' counsel urged, that an offer to reconvey was necessary on the part of the defendant before any defence could be made against the notes. *Emery J.,* instructed the jury, that if they believed, that such contract was made by the plaintiffs to sell to the defendant at the same rate they gave to *Hatch* for the bond, and that they took notes for a larger sum on a false and fraudulent representation of the amount given by them for the bond, that this note should be apportioned, and that they should find a verdict for the plaintiffs for such proportion of

the note, as the sum of $500 bore to the sum of $2000. The verdict, which was for the plaintiffs, on these principles, was to be set aside, if the testimony was improperly admitted, or if the instructions to the jury were erroneous.

*W. P. Fessenden*, for the plaintiffs, in his argument said:

1. That if the transaction was to be viewed merely, as a contract between the parties, then the statements of the sum the bond cost the plaintiffs were to be considered merely, as inducements to the purchase, and that the written contract alone must govern. As a contract the price for which the article is sold is the only evidence of its value, and the defendant is bound to perform it on his part, and pay the notes. If the testimony be admissible, it is only for the purpose of showing, that there was fraud on the part of the plaintiffs, which would avoid the sale. In all cases of fraud there are necessarily false representations, and a contract in form occasioned by them. But these representations are no part of the contract, and can be admitted only to show, that there was no binding contract between the parties by reason of the fraud. If there was fraud here, it affords no defence to the notes. It might enable the defendant to rescind the contract; but in such case he must place the other party in the situation he was in before the making of the contract. He must return the property he has received under it, and not attempt to take advantage of the fraud in reduction of damages. He must go for the whole or none. He cannot keep the property, and avoid the notes, or any part of them. 2 *Stark. Ev. Metcalf's Ed.* 640; *Kimball* v. *Cunningham*, 4 *Mass. R.* 502; *Conner* v. *Henderson*, 15 *Mass. R.* 319; *Norton* v. *Young*, 3 *Greenl.* 30; 9 *Greenl.* 309, *Sale*, 9, and cases there cited.

2. The testimony of *Baldwin* was improperly admitted.

This was a distinct conversation with another person at a different time, and was not communicated to the plaintiff. 2 *Stark. Ev.* 470; *Flagg* v. *Willington*, 6 *Greenl.* 386; *Somes* v. *Skinner*, 16 *Mass. R.* 348; *Carter* v. *Pryke*, *Peake's N. P. cases*, 95; *Boldron* v. *Widdons*, 1 *Car. & P.* 65.

3. Although it is admitted, that this position is inconsistent with the other; it is contended, that the plaintiffs are entitled to recover at least to the amount of the verdict.

Where a party has been imposed upon, the security taken is still good for the actual value of the property sold. *Powell on Contracts*, 97 to 100; 5 *Dane's Ab.* 112, 113.

*Abbott*, for the defendant.

The verdict should not stand for any sum. The fraud cannot be separated from the contract, and the bargain held good for part, and bad for the residue. The party guilty of the fraud cannot come into court and be permitted to say, that although he has committed a fraudulent act, still he may recover on the note, as much as would have been due, if he had conducted honestly. But it is said, that the plaintiffs are entitled to recover the amount of the note, because the notes of *Dibble* were not returned. But they were in the hands of the plaintiffs, as the case shows, and no other return could be made. The bond had been given up by the assent of both plaintiffs and defendant before the defendant had any knowledge of the fraud. In the cases cited for the plaintiffs some beneficial interest passed; but here there was was none. Nothing passed, unless the interest in the *Dibble* notes, which could not be returned to the plaintiffs, as they already had them.

The question is not whether *Baldwin's* testimony was sufficient to prove the fraud, but whether it was competent evidence for that purpose. The intentional misrepresentation of the plaintiffs was the subject of inquiry, and for that object, what the plaintiffs said to others on the same subject is admissible. *Seaver* v. *Dingley*, 4 *Greenl.* 320; *McKenney* v. *Dingley*, *ibid.* 172.

*Kent* replied for the plaintiffs.

The opinion of the Court, after a continuance *nisi*, was drawn up by

WESTON C. J. — If the defendant would rescind the contract, out of which the note in controversy grew, on the ground of fraud, he should, as soon as he discovered the fact, have given notice to this effect to the plaintiffs, assigning or offering to assign to them what he received, or the proceeds of it. This is required by the uniform current of authorities.

From the view we have taken of the cause, we do not regard as material the testimony of *Edward P. Baldwin*, the admissibility of which was objected to by the counsel for the plaintiffs. The de-

fendant, retaining the consideration, cannot treat the note as fraudulent and void. It is not necessary to resort to the ingredient of fraud, to do justice to the defendant. The facts reported and found by the jury, from testimony not objected to, independent of any direct false representations, are quite sufficient to sustain the verdict. It is not necessary then to decide the question raised as to the competency of the testimony upon which the jury found, that such false representations were made.

The note acknowledges that value was received, which is *prima facie* evidence of the fact. But between the original parties, the consideration is open to inquiry. It might perhaps have been difficult, from the nature of the property, to estimate the exact value of what the defendant received ; but we are relieved from that difficulty, by the express agreement of the parties. The value fixed, was the one half of what the plaintiffs paid to *Nathaniel Hatch,* which half was two hundred and fifty dollars. This valuation, settled by compact between the parties, must be conclusive as to the consideration received. The rate paid to *Hatch,* was the measure of value, proposed by the plaintiffs and accepted by the defendant. When, therefore, the defendant promised to pay one thousand dollars, acknowledging the receipt of so much in value, he evidently acted under a mistake. He had in truth received but one fourth part of that sum. The other three fourths, supposed to have been received, never had any real existence. It is not material to inquire from what cause the mistake originated. Whether it was mutual, or whether it was occasioned by the practices of the plaintiffs, the defendant is equally entitled to be relieved from its injurious consequences. The jury have, as we think, very equitably and properly, charged him only to the extent of the consideration received.

*Judgment on the verdict.*

---

### NOTE.

The question, whether in an action for the recovery of the price of an article, sold with warranty of its goodness, or in relation to which there was a fraudulent misrepresentation, the defendant may give in evidence the breach of warranty, or fraud, in reduction of the plaintiff's claim, without having returned the article, seems to have been, as yet, undecided in this State.

Stevens *v.* McIntire.

*Kimball* v. *Cunningham, 4 Mass. R. 502; Conner* v. *Henderson,* 15 *Mass. R.* 319, before the separation of this State from *Massachusetts,* and *Norton* v. *Young,* 3 *Greenl.* 30, since, are cases where the party attempted to rescind the contract and avoid it entirely, and have no application to this inquiry. The case of *Lloyd v. Jewell,* 1 *Greenl.* 352, was an action on a note given for the purchase money of land conveyed by deed with covenants of warranty of title, and a failure of title to part of the premises was set up to reduce the damages. The decision of the Court, that this evidence was inadmissible for that purpose was placed on the ground, that the only remedy was on the covenants of the deed, and denies, that the principle now under consideration applies in that case.

In *Massachusetts* no case has been found decisive of the question. *Rice* v. *Goddard,* 14 *Pick.* 293, in which the authority of *Lloyd* v. *Jewell* is denied, and, *Dickinson* v. *Hall, ibid.* 217, merely decide, that an entire failure of consideration is a good defence to an action for the purchase money. The *decision* in *Parish* v. *Stone,* 14 *Pick.* 198, is founded on the same principle, as *Stevens* v. *McIntire,* and does not profess to *decide* the subject of this inquiry.

In *New York* the affirmative has been fully established by a series of decisions. *Beecker* v. *Vrooman,* 13 *Johns.* 302; *Sill* v. *Rood,* 15 *Johns.* 230; *Hills* v. *Banister,* 8 *Cowen,* 31; *M'Allister* v. *Reab,* 4 *Wend.* 483, and the same case in the Court of Errors, 8 *Wend.* 109. Other cases in this country have been noticed affirmatory of the principle. *Miller* v. *Smith,* 1 *Mason,* 437; *Steigleman* v. *Jeffries,* 1 *Serg. & R.* 477; 2 *Kent's Com. 3d Ed.* 476, and cases cited in *note a; Shepherd* v. *Temple,* 3 *N. H. Rep.* 455, where it was held, that proof, that the article sold was of no value to the purchaser, furnished a good defence in an action for the price, without a return of the article.

On the other side, in some of the States, decisions have been made in the negative. 2 *Kent's Com. 3d Ed.* 474.

In *England* the authorities are in some degree conflicting, but the latest, which have been found on the subject, and which are of very high authority, seem to settle the law there in accordance with that in *New York.* Among them are *Street* v. *Blay,* 2 *Barn. & Adol.* 456, (22 *Com. L. Rep.* 124); *Poulton* v. *Lattimore,* 9 *Barn. & Cr.* 259, (17 *Com. L. Rep.* 373); and *Pearson* v. *Wheeler,* 1 *Ryan & Moody,* 303, (21 *Com. L. Rep.* 446).

Circuity of action and multiplicity of suits are always to be avoided, where justice can be done without them; and on the whole view of the cases, the true principle *is believed to be this:*—

In an action for the recovery of the price of an article sold, where the seller has warranted its goodness, or in relation to which he has made a fraudulent misrepresentation, the breach of warranty, or fraudulent misrepresentation, may be given in evidence to reduce the damages, although the article has not been returned.

Where an exchange has been made, under similar circumstances, and an action is brought for the difference money, the same rule would follow; and some of the cases cited are of that description.