Butler *v.* The Cornwall Iron Company and others.

22 335
66 163

BUTLER *vs.* THE CORNWALL IRON COMPANY AND OTHERS.

Whether, in a bill in chancery, for a disclosure, and an account, the plaintiff, who has called the defendant, as a witness, and heard his answers, may call other witnesses, to prove that he had, out of court, made representations contradictory to such answers. *Qu.*

An agreement, made by a majority of the directors of a corporation, among themselves, privately and unofficially, that they should be paid a percentage, upon all the money raised upon the credit of a bond of indemnity, signed by them, against the future indebtedness of said corporation, is not binding on such corporation.

Where the report of a committee in chancery stated, that the accounts of the several parties and firms, with which the litigants had been connected, in their business operations, " were so interwoven and intermingled, the one with the other, that it would be almost impossible to settle one account, without taking into consideration the other accounts, at the same time," and it appeared, that the committee had investigated and adjusted such accounts, as far as requested by either party to the bill,—but no error was shown in the finding, in this respect, nor did it appear that either party was injured thereby; it was held, to be not a sufficient reason for rejecting the report.

A party has no right to inquire of a witness, whether the plaintiff could have worked on a certain water-wheel, without his knowledge; it being for the witness to state the facts, and his means of knowledge.

The account-books of a party to a bill in chancery, supported by collateral and corroborative proof, are admissible in evidence, in favor of such party, although the person, by whom the entries were made, is not present, to testify to their correctness.

THIS was a bill in equity, brought to the superior court, for Litchfield county, by Calvin Butler, against Jacob Scovill, Riley Rexford, and the Cornwall Iron Company, praying for a disclosure, and an account. A committee was appointed by said court, to ascertain the facts, who, at the February term, 1853, made their report, substantially, as follows :

Said Cornwall Iron Company is a body politic, incorporated by the legislature of this state, in 1832, and, ever since that year, has been engaged in merchandising and manufacturing pig iron, in the town of Cornwall, and at the date of said report, was profitably carrying on said business. The capital stock of said company was by this charter to be ten thousand dollars, divided into twenty shares, of $500 each, and the same had not been entirely paid in. Said Butler, Scovill, and Rexford, were, with others, original subscribers for the stock of said company, and, at the present time, said Butler was the owner of three shares of said stock,—Scovill, of seven shares, and Rexford, of six shares.

Said company owned a blast furnace, and other real estate, in said county, of the value of thirteen thousand, two hundred and thirty-seven dollars. All the lands of said company, not in the immediate vicinity of said furnace, were purchased, by the said company, or by said Scovill and Rexford, jointly, or by said Butler, Scovill, and Rexford, jointly, from time to time, for the purpose of procuring wood and coal, to carry on the business of manufacturing pig iron, at said furnace.

Said Scovill and Rexford, during the trial before the committee, executed and delivered to said company, their joint deeds of three parcels of said land, which rightfully belonged to said company, and which they had purchased therefor, in their own names, for the benefit of said com-

pany. Said Butler, Scovill, and Rexford, at the same time, executed, and delivered to said company, their joint deeds of two other parcels of said real estate, which rightfully belonged to said company, which they had theretofore purchased, in their own names, for the benefit of the company. The title of said several parcels of land was in the names of said Scovill and Rexford, and in the names of said Butler, Scovill and Rexford, because the several grantors preferred the responsibility of said Butler, Scovill and Rexford, to that of said Cornwall Iron Company. On the first day of April, 1852, said company was the owner of personal property, and choses in action, amounting to $8,454.25, after deducting all debts not collected. Said Scovill, Rexford and Butler were directors, and, since February, 1846, they have been and now are the sole directors of said company.

Said Scovill and Rexford, since the year 1845, held a majority of the stock of said company ; and the business of said company, since 1845, has been managed and controlled generally, either by them personally, or by agents and clerks appointed by them. Said Butler, since said last mentioned date, has not acted or participated in the meetings of said company, as director or stockholder, except, perhaps, in a very few instances. Said Scovill has been, for the last ten years, the president, and said Rexford the secretary, of said Cornwall Iron Company. Prior to the 31st of March, 1843, said company was without much credit, money and means, and was unable, on its own credit and responsibility, to obtain moneys and means to carry on its business. Said Butler, Scovill and Rexford had, theretofore, at divers times, jointly and individually drawn, signed and indorsed divers notes, drafts and other papers, to a very large amount, for the purpose of procuring money and means to conduct and carry on the business of said company. On the 31st of March, 1843, said Butler, at the request of said Scovill, the agent of said company, at that time, Samuel Scovill, (who was at

that time, the sub-agent of said Jacob,) and said Rexford, signed and executed jointly and severally, with the said Jacob Scovill, and Rexford, Lyman M. Merryfield, and others, a certain bond to the Bridgeport Bank, in the penal sum of fifteen thousand dollars, for the purpose of procuring means to carry on the business of said company. At the time of the execution of said bond, all said obligors were stockholders in said company, and said Jacob Scovill, Butler, Rexford and Lyman M. Merryfield were the directors of said company. Said Butler, J. Scovill and Rexford, at that time, were the only obligors on the bond, who had credit and substantial means ; and the other obligors were men of small means, whose responsibility to pay said bond could not be relied on. To said bond there was a condition, that it should become void, if said company should pay all the indebtedness of said company to said bank, by reason of being drawers, indorsers, or acceptors of any bills of exchange, notes, drafts, checks, or other instruments discounted by, or passed to, said bank. At the time of the execution of said bond, it was agreed between the said Jacob Scovill, Rexford and Calvin Butler, that they should, severally, receive from said company, one per cent. on said sum of $15,000, for every year that said company should continue to obtain funds, to carry on the business of said company, from said bank, on the credit of said bond ; and, in consideration of said agreement, said Butler, Jacob Scovill and Rexford signed said bond ; but said agreement was never made known to the other signers and stockholders in said company, nor had they any knowledge of it. It was further agreed between said obligors, that, after the lapse of a reasonable time, said bond should be canceled ; and that a reasonable time had elapsed since the execution of said bond, and that the same ought to be canceled, at least so far as said Butler was concerned.

Large sums of money were obtained by said company, for its legitimate business, from said bank, upon the credit of

said bond, every year since its execution, and said company still continued to obtain money from said bank, on the credit of said bond. On the first day of April, 1852, the company claimed a balance of account, as standing on their books, against Calvin Butler, of $355.62, as due from him; after which time, no business transactions had occurred between said Butler and said company. By reason of omissions, on the part of said company, to give said Butler proper credits, from time to time, and through errors in footing, on the books of said company, and by neglect of said Butler, to keep an account of his business transactions with said company, said balance was incorrect, and said company were, in fact, justly indebted to said Butler, on said first day of April, in the sum of $6,043.73, by book account. At, and prior to, the first of May, 1846, said Jacob Scovill and Rexford were the owners of about one acre of land, situated in West Cornwall, on which there was a small water privilege, each having an individual moiety; which premises had been purchased by the Cornwall Iron Company, and paid for by said company, and charged over to said Scovill and Rexford, on the books of said company. On the first day of May, and prior thereto, said Butler and Schuyler G. Chadsey, as copartners under the name of Butler & Co., were engaged in the foundry business, at Winsted, Connecticut. On said day, the Cornwall Iron Company, by its agent, contracted to build a foundry and machine-shop on said land, for said Scovill and Rexford, to be leased to said Butler, for foundry purposes. On the same day, said company, by its agent, entered into another contract with said Butler, stipulating that said Butler should build said foundry and machine-shop, and that said company should pay him therefor, the sum of $920.50; of which sum the committee allowed Butler $910.50, which was included in his said balance against said company, the said Butler having substantially fulfilled said contract. In September, 1846, said Butler and Chadsey took posses-

sion of said foundry and machine-shop, and carried on the foundry business, as co-partners, until on or about the 20th day of June, 1847, when said Butler and Chadsey dissolved their partnership, and said Butler assumed the liabilities of said Butler & Co. to the Cornwall Iron Company, there having been business transactions between said Cornwall Iron Company and said Butler & Co., during the existence of said Butler & Co. On an adjustment of their mutual accounts, said Butler & Co. were indebted to the Cornwall Iron Company, in the sum of $1,811.30, which sum, deducted from the balance, $6,043.73, before found due said Butler, from said Cornwall Iron Company, shows a balance of $4,232,43, due said Butler, from said Cornwall Iron Company.

On the 16th of August, 1847, there were standing on said acre of land, said foundry, machine-shop, and a certain dwelling-house, called the Cone house, which had been built by said Cornwall Iron Company, with the funds of said Cornwall Iron Company; and the same had been charged over to the said Jacob Scovill and Rexford, on the books of the Cornwall Iron Company, and the rents and profits of said land and buildings had been credited, in the account of said Scovill and Rexford with said Cornwall Iron Company. Prior to said 16th day of August, it was agreed between said Jacob Scovill, Rexford, Calvin Butler, and one Bailey Bowditch, that said Butler and Bowditch would purchase, each of them, one undivided one-fourth of said acre of land, with the buildings thereon, of said Scovill and Rexford, and that they would enter into co-partnership in the foundry business, provided, said Scovill and Rexford would purchase of said Cornwall Iron Company, an addition to the water privilege of said foundry, of two hundred feet, extending on Mill Brook, so called, from the east line of said land, on which said foundry stands, with the right of raising a dam three feet high; it being at the time understood between all the parties, that the water privilege was not sufficient for the purposes of said foundry. In pursuance of said understanding, said

Scovill, under the authority of certain votes of the directors of said company, executed a deed, in behalf of said Cornwall Iron Company, to Riley Rexford; and, on the same day, said Rexford executed a deed of the same land and privilege, which was conveyed to him by the last named deed, to said Butler, Jacob Scovill and Bowditch, each an undivided one-fourth, by which all the said parties believed that a good title to said additional water privilege was vested in them. On the trial before the committee, it being claimed by the plaintiff, that he had no title to said additional water-power, and that he could not avail himself of the water for the purposes of said foundry, and that it reduced the consideration of a certain thirteen hundred dollar note, said Jacob Scovill and Rexford procured a deed from said Cornwall Iron Company, purporting to convey said additional water privilege to Daniel Scovill, dated Feb. 4th, 1853; and said Daniel Scovill executed a deed on the same day, to said J. Scovill, Rexford and Butler, conveying the premises described in the last named deed. Said J. Scovill and Rexford tendered said two last mentioned deeds to the petitioner, in order to perfect his title. On said 16th day of May, 1847, the said J. Scovill and Rexford conveyed, by deeds properly executed, to Butler and Bowditch, each the one equal undivided one-fourth part of said acre of land, and the foundry, machine shop, and Cone house, thereon standing. And in consideration thereof, and of said additional water-power, said Butler and Bowditch, each for himself, executed his promissory note for the sum of thirteen hundred dollars, payable to said Scovill and Rexford, one year from the 16th of August, 1847. On the same day, said J. Scovill, Rexford, Butler and Bowditch, in pursuance of their agreement, entered into articles of copartnership, in the foundry and machine business, as equal partners, under the name of the West Cornwall Iron Foundry Company, and continued in said business, until the first day of January, 1848, when said West Cornwall Iron Foundry Company

dissolved, and said Bowditch sold out all his interest therein, to said J. Scovill and Rexford, who assumed all his liabilities, arising out of said business. On the 24th day of March, 1848, said Bowditch conveyed his interest to the said acre of land, water privileges, and buildings thereon, to said J. Scovill and Rexford. The Cornwall Iron Company erected on said 16th day of August, a hotel, barns, sheds and other buildings, on said acre of land, and controlled and managed all said property, with the money of said Cornwall Iron Company, and charged over to said J. Scovill, Rexford and Butler, on the books of said company, all the money, labor, &c., expended on said property, and received all the rents and profits of said property, and carried the same to the credit of said J. Scovill, Rexford and Butler. Said West Cornwall Iron Foundry Company were, on the first day of April, 1852, indebted to said Cornwall Iron Company, in the sum of twenty-three hundred sixty-seven dollars and forty-four cents.

The committee found that said Cornwall Iron Company were, on said last named day, justly indebted to said J. Scovill, Rexford and Butler, for the rents and profits of said premises and property, in the sum of one thousand seven hundred eighty-eight dollars and ninety-two cents, leaving a balance due the Cornwall Iron Company, of five hundred seventy-eight dollars and fifty-two cents, from J. Scovill, Rexford and Butler, of which sum it was the duty of said Butler to pay to said Cornwall Iron Company one-fourth, being one hundred and forty-four dollars and sixty-three cents; and the remainder to be paid to said Cornwall Iron Company by said J. Scovill and Rexford, jointly, viz., four hundred and thirty-three dollars and eighty-nine cents. And that, if the court should direct, that, from the balance before found due to Butler from said Cornwall Iron Company, the above named sum should be deducted, it would leave four thousand eighty-seven dollars and eighty cents, due Butler from said Cornwall Iron Company.

The committee further proceeded to adjust the account

between said Butler and the Cornwall Iron Company, by deducting from the aforesaid balance the amount of certain notes, by which he was indebted to the latter. After which deduction they found a balance due Butler, of $3,750.24.

And, that if the court should allow said Butler his commission for signing said bond, as aforesaid, then there should be added to said balance the sum of $1,723.57, making due Butler, in all, the sum of $5,473.81, due on said first day of April, 1852. The committee found due to said Butler $675.04 from said West Cornwall Iron Foundry Company, three-fourths of which sum it was the duty of J. Scovill and Rexford to pay to said Butler, which last named sum should be deducted from said note before mentioned, of $1,300, and the interest thereon to April, 1852, $360.75, amounting in all to the sum of $1,660.75, from which said sum of $506.28, should be deducted, leaving a balance of $1,154.47, due said J. Scovill and Rexford from said Butler, on the 1st day of April, 1852.

But that, if the court should be of opinion, that said deeds did not vest in said Butler, a good and sufficient title to said additional water privilege, then there should be deducted from said $1,300 note, the sum of $450, as a partial failure of the consideration of said note. They also found that there was due said Jacob Scovill from said Butler, the sum of $8.65, and that Riley Rexford was indebted to said Butler, to balance book account between them, the sum of $9.68. The committee further found, that all the accounts with the said several parties, which had been adjusted, were so interwoven and intermingled, the one with the other, that it would be almost impossible to adjust one account, without taking into consideration the other accounts, at the same time, with the exception of the last account named, as adjusted between said Butler and Rexford.

The committee also found, that Jacob Scovill and Rexford were jointly indebted, on the first day of April, 1852, to said

Cornwall Iron Company, in the sum of $3,293.92, and that said company was indebted to said Scovill, individually, in the sum of $3,238.06 ; that said Rexford was indebted to said company in the sum of $2,675.56.   And if the court should allow said Scovill and Rexford, for executing said bond, then the last named amount would be varied accordingly.   The real estate of said company was found to be of the value of $13,237, and the amount of personal estate, after deducting their liabilities, $2,079.10.

Against the acceptance of said report, the defendants filed a remonstrance, alleging, as grounds of remonstrance, the following matters : 1. That said Butler, for the purpose of proving his right to compensation for executing the bond mentioned in said report, introduced Jacob Scovill, one of the respondents, and inquired of him, whether it was not, at the time said bond was executed, or at some other time, agreed, by said Cornwall Iron Company, or by him, that said compensation should be paid by said company, to Butler, for executing said bond ; but said Jacob denied all knowledge of such agreement.   Thereupon, the plaintiff offered George Goodwin, to testify, that, after the commencement of this suit, said Jacob told him that such agreement was made, as said Butler claimed ; (no inquiry having been made of said Jacob, whether he had ever made such declaration or not ;) to which testimony of said Goodwin, the respondents objected ; but the committee received it

2. In order to evince his right to the compensation claimed by him, for executing said bond, said Butler testified, that, at the time of the execution thereof, by said Butler, Jacob Scovill, and Rexford, it was agreed between him and said Scovill and Rexford, at a meeting between them, no other director or stockholder of said company, or obligor in said bond, being present, or having any notice or information of such meeting or agreement, they, the said Butler, Scovill, and Rexford, should each of them be paid by said company,

for executing said bond, a compensation, at the rate of one per cent. per annum, upon all moneys which should be raised upon the credit of said bond, and that, solely upon the faith of such agreement, he executed said bond. But said Scovill and Rexford testified, that no agreement was ever made by them, or either of them, or by any other person to their knowledge, nor any understanding had, between said Butler and them, or either of them, that said Butler, or any other of the obligors in said bond, should be allowed or paid any compensation whatever, for, or on account of, becoming obligors in said bond, or of their respective liabilities thereon. It was agreed, that said Scovill, Butler and Rexford all executed said bond before the other obligors, and that the other obligors were not, until long after the execution of said bond, if ever, informed of the existence of such pretended agreement. Said Butler also introduced the deposition of a clerk in the Bridgeport Bank, to prove that more than three hundred thousand dollars had, since the execution of said bond, been raised by said Cornwall Iron Company, and drawn from said bank, upon the credit of said bond. And no evidence of any agreement for the compensation claimed by Butler for executing said bond, except the testimony of said Butler and of said Goodwin, before stated, was produced before said committee. The defendants therefore objected against the allowance to said Butler, of the sum of one thousand seven hundred twenty-three dollars and fifty-seven cents, mentioned by the committee, as a compensation for the execution of said bond, or his liability thereon ; because there was no evidence before them, to prove the agreement found by said committee ; because such agreement, if made, in fact, was in fraud of the rights of the other obligors in said bond, and of the other stockholders in said company—was an entire contract between the said Scovill, Butler and Rexford, to pay themselves only, out of the funds of the Cornwall Iron Company, in fraud of the rights of said company—was

an agreement which they had no right or authority to make, and was void in law.

3. And, in order further to evince his right to such compensation, under said agreement, said Butler offered evidence to prove, that, at the time said bond was made, he was, and ever since had been, reputed to be a man of large property and good credit. To which evidence the respondents objected ; but the court admitted it.

4. In the further progress of· the trial, said Jacob Scovill having testified, that, more than ten years before the commencement of this suit, he had purchased for himself a farm in Massachusetts, and paid for it, with his own money, said Butler inquired of him where he obtained that money ; to which inquiry the defendants objected, because the answer must be irrelevant to the, matter in issue ; but the committee admitted the evidence.

5. Said Butler also claimed, that said Jacob Scovill and Rexford held a note against him, for one thousand and three hundred dollars, and interest, which had never been paid, and claimed the right to impeach the consideration of said note, and, for that purpose, offered parol evidence to prove that, before the making of said note, said Scovill and Rexford agreed, by parol, to convey to said Butler, one undivided fourth part of the one acre of land and the buildings thereon, and of the 200 feet and additional water privilege mentioned in said report ; and that, in order to carry said assignment into effect, so far as regards said 200 feet and said water privilege, the deeds mentioned in said report were made, and said one thousand three hundred dollar note given, in consideration thereof, but that one of said deeds was, by mistake, so drawn, as not to convey the whole of said piece of 200 feet and additional water privilege, and was also, for other reasons, utterly void ; to which evidence the respondents objected, because said note was the private property of said Scovill and Rexford, with which said Corn-

wall Iron Company had nothing to do—the plaintiff's bill contained no allegation, regarding said note, or the want or failure of the consideration thereof, or of the invalidity of said deed, or of any mistake therein—and the defendants had no notice of said Butler's intention to attack the consideration of said note, or the validity or correctness of said deed. But the committee admitted said evidence.

6. Said Jacob Scovill and Rexford objected to the application of the sum of five hundred and six dollars and twenty-eight cents, upon said one thousand three hundred dollar note, because said committee had no right to examine, adjust or settle the partnership accounts of the members of said firm of West Cornwall Iron Foundry Company among themselves, nor the account of said Butler against said partnership, no mention being made in said bill, of said partnership, or its affairs, and no prayer that its affairs should be investigated or adjusted, and there being no connection between the accounts of said Cornwall Iron Company and said West Cornwall Iron Foundry Company, because said Butler had given to the defendants no oyer of his last aforesaid claim, which consisted of nearly one hundred items of account against said partnership ; and because said committee did not attempt to settle or adjust the partnership accounts of said Scovill or Rexford, with the other members of said firm, nor to ascertain whether said firm was indebted to said Scovill and Rexford, or either of them, nor in any way to ascertain the amount of the assets of said partnership on hand, nor its debts or liabilities. ·

7. Said Butler, in order to prove one of the items of his account against said Cornwall Iron Company, offered the deposition of Horace Buel, to the admission of which the respondents objected, because said deposition was taken in the form of question and answer, and all the questions, to which answers are given, are leading questions, and ought to be rejected, with the answers responsive thereto. But the committee admitted the deposition.

8. Said Butler claimed, that he had performed a large amount of labor for said company, in the building of a certain water-wheel, for which labor he was entitled to a credit; and thereupon the respondents called a witness, who testified, that he worked upon said wheel, in the building thereof, through the whole job, and that said Butler did not, according to his observation and recollection, work on said wheel. The defendants inquired of said witness, whether said Butler could have worked on said wheel, to any considerable amount, without his knowledge; to which inquiry said Butler objected, and the committee rejected the same.

9. Said Butler claimed a large amount for sundry articles of property which he claimed had been sold and delivered to said Cornwall Iron Company, by a firm composed of said Butler and one Chadsey, doing business under the name of Butler & Co.; and, in order to substantiate his claim for said articles, offered to read in evidence, what he claimed was the original day-book and ledger of said Butler & Co., on which the charges of said goods were made to said Iron Company, in the hand writing, as Butler claimed, of said Chadsey; and Butler admitted, that he had no personal knowledge of the delivery of said goods, or of the making of said charges, and that said Chadsey was alive, in the state of New York; and no evidence was offered by said Butler, of the accuracy of said charges, or of the delivery of said goods, except such entries. And the defendants objected to the introduction of said book, without the testimony of said Chadsey connected therewith, to prove said entries made by him. But the committee received said entries as legitimate evidence, and allowed said charges against said Cornwall Iron Company. It was agreed, that, on the 18th of July, 1845, a written contract was made between Ralph Butler of the one part, and said Jacob Scovill and Riley Rexford on the other, wherein said Butler conveyed to said Scovill and Rexford certain coal and standing wood, situated on a lot

known as the Perkins lot, delivered, and to be delivered, to said company, at specified prices, payable on the first days of January, April and July, respectively, of each year after said wood was cut and coaled; and containing other provisions relative to the withdrawal of certain suits, and the payment of fees and taxable costs. It was further agreed, that all the rights of said Ralph Butler, under said contract, had been vested in said Calvin Butler, and all the rights of said Scovill and Rexford, in said Cornwall Iron Company.

10. It was also agreed, that said Cornwall Iron Company, under said contract, did, prior to the first day of January, 1848, cut, coal and take a large quantity of the wood mentioned in said contract, for which said company gave to said Calvin Butler credit, in their account, at the prices specified therefor in said contract; and, on the first day of January, 1848, was engaged in cutting and coaling said wood; and that, after said day, said company, with the knowledge of said Butlers, and without any objection from them, continued to cut, coal and take the remaining wood on said land mentioned in said contract, until it had taken off the whole of said wood, and during said year, it cut and took from said land, the wood for 28,289 bushels of coal, for which it gave said Calvin Butler credit on account, at the price stipulated in said contract. It was not claimed, that any new contract had been made, between said parties, regarding said wood; no claim was made, or evidence offered, to prove, that any notice was ever given to said company, or its agents or servants, that said Butlers were unwilling to have said company take the residue of said wood, remaining on said land, on said first day of January, 1848, under said contract, at the price therein specified, or that said Butlers expected to receive from said company, anything more than the price specified in said contract. But said Calvin Butler now claimed, that the market value of all the wood remaining on said land, on said first day of January, was, and that he was entitled to recover of said

company, at the rate of two dollars per hundred bushels of coal, for all said wood taken by said company after said first of January, and offered evidence to prove such market value ; to which evidence the defendants objected, because, as they claimed, the price of said wood was agreed upon, in said contract, and was fixed thereby, at the sum of $1.20 per hundred. The committee overruled said objection, and admitted said evidence, and allowed to the said Calvin Butler, in his account, at the rate of two dollars per hundred, for all the wood taken by said company, after said first day of January, as said Butler claimed, with compound interest thereon, charged annually in said Butler's account against the company.

11. The defendants also objected to the acceptance of the report, because no dealings had been had between said Calvin Butler and said company, since the first day of April, 1847, except the taking of said wood, by said company, under said contract, and nothing had occurred to affect the state of the accounts between said Calvin and said company, or to vary the balance then due to the one party or the other, since that time, except the taking of said wood by said company, and the accruing of interest on such balance ; that, after making the corrections in said accounts, which the ·committee found ought to ·be made, there was a large balance of account, found due from said company to said Calvin Butler, on said day, and that, upon that balance, said committee, in making up said accounts, and finding the final balance due to said Butler thereon, allowed to said Butler, compound interest, computed at the end of each year, since said first day of April, 1847 ; and said committee also computed and allowed to said Butler, compound interest upon the amount of the price of said·wood, taken under said contract, and upon all the items of claim of said Butler against said company ; which compound interest exceeds the legal rate of interest, upon all said Butler's claims, in the sum of one thousand dollars. And, although it was admitted and found by said committee, that the foun-

dry and machine-shop, mentioned in said report, were built under an express contract in writing, for a price specified, and that said buildings had never been completed; and that said contract was still open, and no credit for said buildings had been given to said Butler, on the books of said company, and no charge of such building made by said Butler, and so, the right of said Butler to compensation rested entirely on said written contract; yet, said committee, having found, that said Butler was entitled to $910, for said buildings, entered that sum in the account between said Butler and said company, to the credit of said Butler, and upon that credit, allowed to said Butler, compound interest, for more than five successive years, which said committee ought not to have allowed; and, although said committee, in making up the balances, found due to said company, by book, from said Scovill and Rexford, jointly and severally, charged against them compound interest, for many years on all balances due at the end of each year—yet, said committee allowed, in favor of said Scovill, simple interest only, on the note of said Scovill against said company, mentioned in their report; though the whole amount of said note had been due to said Scovill, from said company, ever since its execution, on the first of March, 1845. And, in the same way, said committee allowed only simple interest on the note of said Rexford, against said company, mentioned in said report. Said Scovill and Rexford objected to any deduction from their $1,300 note against said Butler, on account of any failure of consideration, because if said deeds, annexed to said report should be, by the court, found defective, or for any cause insufficient to convey the property intended to be conveyed thereby, they are, and always have been, ready to make any other sufficient and proper deeds, to perfect the title in said Butler, according to the true intent of the parties.

12. At the February term, 1852, the court ordered, that

the plaintiff should give to the defendants oyer, or a bill of particulars, of all his claims against the defendants under his bill, except such as appeared upon the books and papers of the defendants. And, in pursuance of said order, said Butler gave to the defendants, a bill of particulars of his claims. Upon the trial before said committee, said Butler charged and claimed against said Cornwall Iron Company, a great number of items of charge, not included in his bill of particulars, and not appearing on the books or papers of the defendants, and of which charges the defendants had no previous notice. To which items, and to the evidence offered by said Butler in support of the same, the defendants objected, but the committee admitted said charges and said evidence, and allowed said charges against said company, as claimed by said Butler.

Said remonstrance was heard at the February term, 1853, when the court found the following facts :

In regard to the first matter of exception, made to the proceedings of said committee, by the remonstrants, the plaintiff offered to prove, by Jacob Scovill, the facts, as set forth by the defendants, who denied all knowledge of the same. Afterward, the plaintiff called George Goodwin, who testified, as stated in said first matter of exception, although objection was made to such testimony, and no inquiry had been made of said Scovill, on his examination, whether he had ever had any such conversation with said Goodwin, as was sworn to by Goodwin ; and the testimony of Goodwin was received and heard by said committee, notwithstanding said objection. Said Scovill was not only testifying, as a witness on said hearing, but was disclosing, as a defendant, and as required to do by said bill, his knowledge, in regard to the facts set up therein. The objections made by the defendants before said committee, to the testimony of said Goodwin were, that Butler and Scovill were not parties to the agreement relied upon, and that, as the plaintiff had called

Scovill as a witness, he could not contradict him by the testimony of Goodwin, and also, that no foundation had been laid for such an inquiry by the plaintiff, because he had not inquired of said Scovill, whether he had ever stated to said Goodwin or any person, substantially, what said Goodwin had sworn to.

2. As to the second matter of remonstrance, the court found, that the testimony of said Butler, and the testimony of said Scovill and Rexford, in regard to the agreement for an allowance of one per cent. to each of them, for signing said bond, was substantially as alleged by the defendants; that it was proved to said committee, by the books of the said company, that said Scovill and Rexford had been allowed a compensation of one per cent., for indorsing notes and papers of said company, and, therefore, the committee found, that the testimony of said Butler was true, in regard to the compensation to be paid to himself. But said Butler, Scovill and Rexford were acknowledged to be responsible persons, and upon their credit, chiefly, the business was transacted. The other obligors to said bond executed the same afterward, and whether they, or either of them, knew of any such agreement, did not appear. And the court did not find, that any actual fraud upon anybody was intended by said parties, in making said agreement.

The committee allowed to Butler, in their report, as a compensation under said agreement, the sum of one thousand seven hundred twenty-three dollars, fifty-seven cents.

3. As to the third matter of remonstrance, the court found the same to be true.

4. As to the fourth ground of remonstrance, the court found the facts alleged to be true; but, also, that, on the trial before the committee, said Butler claimed, that the funds of said Cornwall Iron Company had been diverted by said Scovill, and that said farm in Massachusetts was paid for, after the formation of said company.

5. As to the fifth ground of remonstrance, the court referred, as to some of the facts connected therewith, and explanatory thereof, to the report of the committee; and also found, that the plaintiff had executed his note for $1,300, as payment in part for land and privileges particularly mentioned and described in said report, to Scovill and Rexford, and that, on the trial before said committee, the respondents exhibited said notes for allowance against, and in reduction of, the claims of the defendants, to which the plaintiff did not object; but claimed, that, by reason of either fraud or mistake, there was a failure of title to 200 feet of the land intended to be conveyed by the deeds referred to, and, which constituted, in whole or in part, the consideration of said note, and offered parol proof of the original contract of purchase, for the purpose of showing the same. The committee admitted said proof. The plaintiff had given no notice to the defendants, before said trial, of any such claim. And the court found, that other deeds, as stated in said remonstrance, and found by said committee, had been offered to the plaintiff.

6. As to the sixth ground of remonstrance, the court found, that, on the trial before said committee, the remonstrants did, at first, object that said committee had not, under the bill, any power to adjust and settle said partnership accounts of the members of said firm of West Cornwall Iron Foundry Company among themselves, nor the accounts of said Butler with said partnership. But said committee decided differently. The plaintiff had given no oyer of any claims he had against said company, nor did the committee settle or adjust the accounts of said Scovill and Rexford with the other members of said firm, nor in any way determine the condition of said partnership; but the committee proceeded to investigate said matters, as far as requested by either of the parties to the bill, and as far as documents and proof were produced for that purpose. And, whether said

committee had power to determine the matter of the note of $1,300, was referred to the consideration of the supreme court of errors.    The parties belonging to the West Cornwall Iron Foundry Company, were the said Calvin Butler, Jacob Scovill, Rexford and one Bowditch; but, before the pendency of this bill, said Bowditch had transferred all his interest in said concern, to Scovill and Rexford.

7. As to the seventh ground of remonstrance, the court found the same to be true; and, also, that the object of said deposition was, to prove the delivery of certain castings to the defendants, by the plaintiff, or on his account.    And it appeared, and was found by the committee, that the books of the defendants, in evidence in the case, proved the delivery of said castings as the plaintiff claimed, and that the same were allowed to the plaintiff by the committee, by reason of said evidence, irrespective of said deposition.

8. As to the eighth ground of remonstrance, the court found the same to be true.

9. As to the ninth ground, set forth by the defendants, the court found the facts therein alleged to be true, except so far as the same are inconsistent with the following facts, also found to be true, viz. : that the books on which said charges appeared, were duly kept, and said charges appeared correctly entered, and the delivery of almost every article charged, was proved by the testimony of the plaintiff, or assented to and admitted by the defendants.

10. As to the tenth ground of remonstrance, the court found the facts therein alleged to be true; and, also, that said defendants did not give to said Butler any special notice, before they removed said wood, &c., that they expected to claim, under said contract, any right to any of the wood remaining, after the expiration of the year, as stated in said contract; but said Butler resided near said wood, and was conversant with the proceedings of the defendants with said wood, and made no objection to the cutting and coaling thereof, by the defendants.

11. As to the eleventh ground of remonstrance, the court found the facts alleged, in regard to the charge of compound interest, by said committee, in favor of the said Butler, on balances due him from the defendants, to be true ; also, that it was proved to said committee, and admitted by the defendants, and found by said committee to be true, that the defendants had, on all occasions, during said copartnership, where it appeared by their books that there was a balance due from said Butler to them, charged said Butler with compound interest on such balances, and such had been the uniform usage of said company, in their accounts with said Butler ; that said committee allowed compound interest on the sum of $910, due to said Butler, for building said foundry, &c., because they found, that said contract for said building had been substantially complied with, and that the aforesaid sum was due from the defendants to said Butler, and should have been duly entered on their books, to the credit of said Butler; that the committee allowed the accounts of Jacob Scovill and said Rexford, as the balances were presented by the parties, with the exception of some small correction of mistakes, and allowed interest on the same, as computed by the parties, and there was no dispute in regard to these ; also, that the committee did not allow compound inest on any notes, holden by said parties, against each other respectively ; the defendants had charged compound interest against Butler and Chidsey, up to 1852, on the sum due from the Foundry Company, to apply on the $1,300 note ; simple interest alone was computed by the committee ; further, that the defendants offered to perfect the title of said Butler to the land and premises which constituted the consideration of the note of $1,300, if the deeds did not constitute such title.

As to the last ground of remonstrance, the court found that the superior court had made an order for oyer, upon the plaintiff, as alleged ; that the accounts of the respective

parties, and their claims, were much interwoven with each other, and had not been clearly designated, on the books of the parties ; that both parties, on said hearing, objected, in several instances, for want of proper and definite oyer ; that in most, if not in all instances wherein the defendants objected, for want of such oyer, the claims objected to were offered in answer, or as set-off or defence to some claim of the defendants ; that the particular charges, set forth in said last ground of remonstrance, as objected to, for want of oyer, were objected to by the defendants, and admitted and allowed by said committee ; these were not original grounds of claim, by the plaintiff, under his bill, but were made, by reason of the claims of the defendants, in the course of said trial, and as a set-off or defence against them.

And the court found, that it did not appear, that either party was injured or prejudiced, in their respective claims upon each other, by reason of any want of oyer, but that a full and fair investigation of such claims, and objections thereto, was made by said parties, before said committee.

All matters and questions of law, arising upon said finding, and upon the report of the committee, were reserved for the consideration and advice of this court.

*Hubbard* and *Wheaton,* for the plaintiff.

*Sanford* and *Norton,* for the defendants.

CHURCH, C. J. Many of the points, suggested by this report and remonstrance, will be passed by, with no other notice, than saying, that they furnish no good reason for objection to the conclusions of the committee. Others deserve a more considerate attention.

1. A principal question, urged and argued in the superior court, under the first exception to the report, we need not now discuss, as we have but a few days ago disposed of it, in Hartford, in the case of *Hedge* v. *Clapp, ante,* p. 262. But, in addition, it is now said, that the plaintiff, having called

Scovill, one of the respondents, and made of him certain inquiries, and heard his answers, may not call other witnesses, to prove that he had, out of court, given a contra-dictory or different representation, from such as his answers, under oath, import.

That a party may not impeach the general character of his own witness, is true. And, that he may prove his own witness to be mistaken, and incorrect in the facts sworn to, is also true.. The precise question here intended to be raised, we do not find it necessary to decide; for, from the view we have taken of the claim of the plaintiff, to the compensation referred to, the result could not be affected.

2. The Cornwall Iron Company object to Butler's claim of compensation, of one per cent. for executing, with others, a bond of guaranty to the Bridgeport Bank, and to the allowance of it, by the committee. And the objection should be sustained.

The only agreement or arrangement, giving countenance to this claim, was made by Butler, Scovill and Rexford, privately among themselves. They were, to be sure, directors of the company; but it does not appear, that they acted as such, in making this arrangement. Merryfield was also a director, but he had no notice of any such meeting as was had by his associates, nor of any such purpose, when it is said the agreement was made. The circumstances all conduce to show, that there was no official action on this subject, which could give Butler a right to claim, or oblige the corporation to pay, the allowance claimed, for executing the bond referred to. The sums allowed by the committee, to Butler, and to Scovill and Rexford, must, for the reasons suggested, be expunged from their respective accounts or claims.

5. The fifth ground of exception is rendered immaterial, by the advice which we give to the superior court, that the title to the property which constituted the consideration of the note in question, be confirmed in the plaintiff.

6. There seems not to be any material question, involved in the sixth objection to the report. The committee say, that the accounts of the several parties and firms, with which the litigants have been connected, in their business operations, are so interwoven and intermingled, that it would be almost impossible to settle one account, without investigating other accounts, at the same time. We can, in this case, easily see how this may be. No fact appears, to show any error in such proceeding, nor is it claimed, that, from the mode adopted by the committee, any injury has resulted to any party. There can not, therefore, here be any propriety in our interfering.

8. The inquiry made of the witness Dickerson, whether Butler could have worked on the wheel in question, without the knowledge of the witness, was properly rejected by the committee. Such questions are often put and answered, but are improper. It is for the witness to state the facts, and his means of knowledge, and for the triers, from these, to determine, whether the act sworn to, or the language said to have been used, as the case may be, was as claimed, or could have been.

9. Upon this exception, it appeared that the books of the firm of Butler & Co. contained charges of articles of property, sold and delivered by said firm, to the Cornwall Iron Company, and charged on the books by Chadsey, one of the members, and the book-keeper of the firm, who, at the time of the hearing before the committee, resided somewhere in the state of New York, and was not produced as a witness. These books had been duly kept, with day-book, journal and ledger, on which these articles appeared, in all respects properly charged. In addition to this, the sale and delivery of almost every article, thus charged, were proved, in conformity with the charges, either by the testimony of Butler, or the admission of the respondents themselves; leaving for dispute, a comparatively small amount, in value, of the articles thus charged. And the defendants objected, that, for these

there could be no recovery, because Chadsey, the book-keeper, was not called as a witness, to prove the charges, and delivery of the articles.

The question here raised is the same as if Butler & Co. offered their books in evidence, in an action of book-debt against the Cornwall Iron Company.

It was not claimed by the plaintiff, that the books alone, unsupported by the strong collateral and corroborative proof of their correctness, were, as matter of law, proof of the sale and delivery of every article charged upon them, but that they furnished legitimate evidence for that purpose, although the person by whom they were charged was not present, to testify.

In this state, from its earliest judicial history, in actions on book, for the recovery of the price of articles usually sold on credit, and charged by merchants, laborers and farmers on their account books, these books have not only been admitted on the trial, but, only in excepted cases, have been required, as furnishing the principal and most satisfactory evidence, and this, not merely in aid of the recollection of the party or his clerk. Sw. Ev. 81. *Palmer* v. *Green*, 6 Conn. R., 14. *Beach* v. *Mills*, 5 Conn. R., 493. There is a necessity for this, and it has been felt by every business community, as is proved by the laws and usages of various commercial states and nations, by which the books of merchants and others are, to a greater or less extent, relied upon by business men and courts of justice. Book-keeping, even, has become a matter of study and science, growing out of this necessity and these usages. It is not within the power of memory, to recollect the delivery of every article, sold and charged on book, in the usual course of dealings, and it is not expected, either by the vendor or the purchaser; and the very fact, that the customer of the merchant receives a credit upon his books, by way of a known account current, furnishes evidence, that he consents that these books shall be used, as a sort of record proof of the sale and delivery of

the property charged upon them,—a part of the *res gestæ* of the delivery ; the credibility of which depends upon the appearance of the entries, the manner and usage of the book-keeping, and the general correctness of charges, as proved by corroborative evidence, as was very convincingly done, in this case. Why should it be considered indispensable, that the book-keeper should be present, to give evidence of the delivery of everything entered upon the books ? He can not remember all, and in many cases, and after a lapse of time, in most, could only testify to the fact of his hand-writing, and his practice and manner of delivery and charge ; and in this case, all these were well proved without him. If Chadsey had been present, and had testified only from the books, and not from his recollection of the sale of the disputed items, the books would have been received upon no more satisfactory evidence of their correctness than the committee had without him, and only as raising a fair presumption, in the absence of contradictory evidence, that all the entries upon them had been as truly made, as those which had been so fully confirmed by the other evidence. And this was all that was claimed. And, as raising a reasonable belief, that such was the truth, we have no doubt, that the books, in connection with the other evidence, were properly received and considered by the committee. It is certainly true, that if no article charged on book can be allowed, without full, independent proof of its sale, books of account, as matters of evidence, are not at all necessary. Vid. 2 Phil. Ev., (Cowen & Hill's Notes,) 682. 1 Greenl. Ev., § 116, 117, 118, and notes 1, 2, 3, § 120. The question here is very distinct from one, to which the defendants would liken it,—that of entries, made by third persons, who are not dead, and offered in evidence for collateral purposes, or of written memoranda, made by parties, in the usual course of business, even, but not in the nature of book accounts.

Butler *v*. The Cornwall Iron Company and others.

*Treat* v. *Barber*, 7 Conn. R., 274. *Dwight* v. *Brown*, 9 Conn. R., 83. *Weeden* v. *Hawes*, 10 Conn. R., 50. . *Stiles* v. *Homer*, 21 Conn. R., 507. These have been considered as a species of hearsay evidence, and, as such, rejected; yet, in many of these cases, the necessity has been so obvious, and the danger of admitting the evidence so improbable, that courts have recognized many exceptions to the general rule of exclusion.

The courts, in the state of New York, and in some other states of our union, have found it necessary to admit the account books of parties, in evidence, where the object of the action was, to recover for the articles charged upon them, or to affect a settlement of mutual accounts, whether the parties, or their clerks, were dead or alive, present or absent, accompanied with the kind of corroborative proof which was heard on this inquiry. *Vosburgh* v. *Thayer*, 12 Johns., 461. *McAllister* v. *Reab*, 4 Wend., 483. *Lawrence* v. *Barker*, 5 *id.*, 306. *People* v. *Genung*, 11 *id.*, 21. *Linnell* v. *Sutherland*, *id.*, 568. *Cole* v. *Anderson*, 3 Halst. 68. This objection, therefore, must be overruled.

10. The next objection grows out of the action of the parties, under a certain written contract for the sale of wood, The defendants, under the contract, had right to cut and coal all the wood standing upon a certain parcel of the plaintiff's land, at a certain price, per hundred bushels of coal, and to be coaled and delivered in two years from January 1, 1846. Under this, the defendants, and those under whom they claimed, proceeded to cut and coal the wood, and continued thus cutting, beyond the first day of January, 1848, before they completed the entire job, and without any new contract, to continue after that time. And the defendants after the first of January, 1848, cut on the land and made into coal, wood to the amount, in quantity, of 28,289 bushels of coal, and gave credit to the plaintiff, at the contract price only. For the wood, cut after that time, the

Butler *v.* The Cornwall Iron Company and others.

plaintiff claimed, and the committee allowed, a higher price, as the then market value of the wood and coal.

It is found, that Butler resided near this wood, was conversant with the operations of the defendants, after January 1, 1848, and made no objections to the cutting and coaling of the wood, by them.

We do not believe, from the facts disclosed here, that, before this controversy commenced, Butler considered the time specified in that contract for cutting off the wood, as material, and that the defendants, after that time, were trespassers upon his land; he treated the subject differently, stood by, and, without objection, permitted the defendants to proceed, as they supposed they did, under the contract; he thus waived, and intended to waive, all objection, on account of time, in the full performance of it. To give effect to his change of purpose, as since expressed, would be to make the defendants trespassers, who were in fact, proceeding under the license of the plaintiff, lawfully. The amount allowed by the committee, as an excess of price, over that provided by the written contract, must, therefore, be subtracted from the plaintiff's account.

Finally: the remonstrants complain, that the committee considered and allowed to the plaintiff, various charges, not specified or included in any oyer which he had given to them, under an order of court, for that purpose.

The bill of the plaintiff is for a discovery, and accounting by the defendants, in which, he does not profess to go into particulars; and the foundation of his proceeding is, that he can not; and therefore he calls upon the defendants to do this. And, when he does go into particulars, as is found by the court, it is not by way of original charge or claim, but only as a set-off or defence, made necessary by the claims of the defendants. Manifestly, no order for oyer can reach such charges.

We think, therefore, that the report of this committee

should be approved, with the exception of the corrections which we have required.

In this opinion, the other judges concurred.

Report to be corrected and accepted.